The defendants were convicted on an indictment charging them with robbing J. E. Vernon, on 20 August, 1932, of two fifty-dollar bills.
The testimony of the prosecuting witness, J. E. Vernon, was to the effect that on 20 August, 1932, the defendants, about six o'clock in the evening, drove up in front of his home in a car and stopped. The house was about 20 feet from the road. The defendants Houck and Gillespie got out of the car and, on the invitation of Vernon, went in the house and defendant Ward stayed in the car and kept the engine running. The prosecuting witness, Vernon, testified, in part: "We walked into the sitting room. I said `Have chairs,' and they didn't take chairs. Houck looked up there. I had a .22 rifle on the wall. Houck looked up and said, `You got a dandy looking little gun.' I said `Yes,' and about that time I sat down and Gillespie was standing in the door. This little boy (Paul Vernon) and the little kids were in the room. Houck took the gun down, whirled it on me. I got up and said, `What do you fellows mean?' When I said that Gillespie came around and said, `If you move another time I will cut you in two,' and I looked around and he had an automatic pistol in his hand. I said, `You all are not officers,' and about that time my wife ran in. Houck took the rifle and says, `Be quiet, Mrs. Vernon.' About this time Gillespie said `Search him there,' and Houck searched me and got two fifty-dollar bills out of my pocket and put it in his pocket. Then they marched us out into the yard, and Gillespie said, `If you ever tell this you are a dead man.' They ran to the car, got into it and drove away. Ward stayed in the car and kept the engine running. The car was driving off when they got there. I had seen the boys before; have been knowing Houck for twelve or fifteen years. I went into the house for about five minutes. I had had that money for about a year. *Page 534 
Houck, at Galax, one day, wanted to borrow a dime to play a game of pool with, and I told him I didn't have but thirty cents and had to get some sugar for my wife with that, and I told him I had these bills wrapped up in a paper, and I told him I didn't want to have them changed for a dime."
On cross-examination, he testified, in part: "I knew Houck and he knew me well. He had been in my house before. Yes, it was broad daylight when they came there. Did not have any mask on their faces. Walked in like anybody else. Gillespie had an automatic pistol. I knew Gillespie. I have known him two or three years. I have seen him from time to time. He has been in my house. He has been out there two or three different times. Don't know what he came for. Had no business to transact with him. Don't know why he stopped at my house. Have no idea why he stopped. First one thing and another. I did not know the gentleman out in the car. May have seen him but didn't know him. . . . I do not make my living blockading, selling, and handling liquor. I have been convicted one time for violation of the liquor law. That was at Dobson, in Surry County. I was convicted; I don't know how many times or how they did it. I don't know how many cases I was tried on that term or how many cases they had against me. I got five months, and served time in Rockingham County. Yes, I escaped from the chain-gang and didn't finish my sentence. Yes, I suppose I am a fugitive from justice."
The exceptions and assignments of error made by defendants on the trial, are as follows: "(1) For that the court erred in refusing to permit the following question and answer: Q. What did you go there for? A. To purchase a quart of liquor. Mrs. Vernon told me I could get some whiskey. I went with her out into the cornfield and she drew a quart of whiskey out of a five-gallon keg which was almost full. I paid her for the whiskey and left. (2) For that the court erred in refusing to permit the following question and answer: Q. Where did you go and what did you do the second time you went to Vernon's house? A. I and the other defendants went to the home of Vernon on this occasion to buy and did buy four gallons of whiskey from the prosecuting witness, Vernon. (3) For that the court erred in refusing to permit the following question and answer: Q. For what purpose did you go up there? A. to purchase a drink."
Judgment was rendered on the verdict. Defendants duly excepted and assigned error to the exclusion of the above evidence offered on the trial by defendants, and appealed to the Supreme Court.
The defendants were charged with a serious offense of robbing the prosecuting witness in his home of two fifty-dollar bills, about six o'clock in the evening. The State's contentions were to the effect that one of the defendants knew that the prosecuting witness, Vernon, had this money. That defendants went there to rob and did rob him. On the other hand, the defendants' contentions were to the effect that they did not rob him and that their presence in the home of the prosecuting witness was to buy liquor. This latter evidence was excluded by the court below. We think, under the facts and circumstances of this case, the evidence competent, material and relevant. Defendants were at the home of the prosecuting witness. Was their purpose there to rob, and did they rob him, or were they there to buy liquor and did not rob him? These questions must be determined by a jury, under proper instructions. The evidence excluded was competent.
Mr. Justice Blackstone said in his Commentaries (III, 367): "Evidence signifies that which makes clear or ascertains the truth of the very fact or point in issue, either on the one side or the other." S. v. Hall,132 N.C. 1094. For the reasons given, there must be a
New trial.